IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RICHARD O.,[1]<br><br>      Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>      Defendant. | Case No. 1:19-cv-01234-SB<br><br>**OPINION AND ORDER** |

**BECKERMAN, U.S. Magistrate Judge.**

  Richard O. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[2] The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions

---

  [1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

  [2] On June 23, 2015, Plaintiff filed applications for both DIB and Supplemental Security Income ("SSI"). (*See* Tr. 17, 237-42, 245-66.) The Commissioner found that Plaintiff was disabled as of June 23, 2015 and awarded SSI benefits, but not disabled through December 31, 2014, the date last insured. (*See* Tr. 12-34, 45.) Plaintiff challenges only the denial of his DIB application.

PAGE 1 – OPINION AND ORDER

of 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's decision and remands for an award of benefits.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.  PLAINTIFF'S APPLICATION

Plaintiff was fifty-one years old on June 23, 2015, the day he protectively filed his DIB and SSI applications. (Tr. 17, 237-72.) Plaintiff completed high school and has past work experience as a retail store area supervisor, a professional equipment and supplies sales and service manager, a sales representative for beauty supplies, a hair stylist, and a caregiver. (Tr. 31,

PAGE 2 – OPINION AND ORDER

48-51, 73, 93, 114, 145.) In his DIB and SSI applications, Plaintiff alleges disability due to HIV and pain in his shoulders and hands.[3] (Tr. 103, 118, 134, 150.)

The Commissioner denied Plaintiff's DIB and SSI applications initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 234-36.) Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held on April 2, 2018. (Tr. 41-80.) On August 23, 2018, the ALJ issued a written decision finding that prior to June 23, 2015, Plaintiff was "not disabled," but beginning on June 23, 2015, Plaintiff became disabled and continued to be disabled through the date of the ALJ's decision. (Tr. 12-40.) Plaintiff now seeks judicial review of that decision.

## II.   THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five

---

[3] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citations omitted). Thus, Plaintiff's date last insured of December 31, 2014 (*see* Tr. 18) reflects the date on which his insured status terminated based on the prior accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before December 31, 2014, he is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

### III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 12-40.) At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity since the alleged onset date. (Tr. 20-21.) However, the ALJ determined that this was an unsuccessful work attempt since Plaintiff stopped working in 2016 after he was diagnosed with cancer. (*Id.*) At step two, the ALJ determined that since the alleged onset date of disability (May 26, 2012), Plaintiff suffered from the following severe impairments: "[A]symptomatic positive HIV and bilateral epicondylitis with history of bilateral elbow tenotomies and right carpal tunnel release." (Tr. 21-22.) At step two, the ALJ also determined that beginning on the established disability onset date of June 23, 2015, Plaintiff suffered from

PAGE 4 – OPINION AND ORDER

the following severe impairments: "[R]ight tonsillar squamous cell carcinoma with single ipsilateral nodal metastasis, status post radical neck dissection and radiation therapy; bilateral carpal tunnel syndrome, status post recent carpal tunnel releases; and asymptomatic positive HIV." (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 22-24.) The ALJ then concluded that prior to June 23, 2015, Plaintiff had the residual functional capacity ("RFC") to perform "light work" subject to these non-exertional limitations: (1) Plaintiff "could occasionally climb and crouch," (2) Plaintiff "could frequently balance, stoop, kneel, and crawl," (3) Plaintiff "was limited to occasional fingering bilaterally," (4) Plaintiff "had [to] avoid concentrated exposure to fumes, noxious odors, dusts, and poorly ventilated areas," and (5) Plaintiff "had to avoid concentrated exposure to hazardous machinery and unprotected heights and moderate noise." (Tr. 24-27.)

The ALJ also concluded that beginning on June 23, 2015, Plaintiff had the residual functional capacity ("RFC") to perform "light work" subject to these non-exertional limitations: (1) Plaintiff "could occasionally climb and crouch," (2) Plaintiff "could frequently balance, stoop, kneel, and crawl," (3) Plaintiff "was limited to occasional fingering bilaterally," (4) Plaintiff "had to avoid concentrated exposure to fumes, noxious odors, dusts, and poorly ventilated areas," (5) Plaintiff "had to avoid concentrated exposure to hazardous machinery and unprotected heights and moderate noise," and (6) due to Plaintiff's "combination of . . . severe impairments and associated pain and fatigue," Plaintiff "would likely be off task 15% or more of the workday and miss two or more days of work per week on a continual basis." (Tr. 27-30.)

At step four, the ALJ concluded that since May 26, 2012, Plaintiff "has been unable to perform any past relevant work." (Tr. 30-31.) At step five, the ALJ concluded that prior to June 23, 2015, Plaintiff was not disabled because a significant number of jobs existed in the national

economy that he could perform, including work as a garment sorter, ticket taker, and marker. (Tr. 31-33.) The ALJ concluded that beginning on June 23, 2015, Plaintiff was disabled because there were no jobs that existed in significant numbers in the national economy that he could perform. (Tr. 33.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to: (1) provide specific, clear, and convincing reasons for discounting his testimony; and (2) provide legally sufficient reasons for discounting the opinion of George Schultz, D.O. ("Dr. Schultz"). (Pl.'s Opening Br. at 6-13.) In the alternative, Plaintiff argues that the ALJ failed fully to develop the record. (*Id.* at 13-14.) As explained below, the Commissioner's decision is based on harmful legal error and not supported by substantial evidence, and therefore the Court reverses the Commissioner's decision.

### I.    PLAINTIFF'S SYMPTOM TESTIMONY

#### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [he] gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and quotation marks omitted).

Under Ninth Circuit case law, clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between [his] testimony and [his] conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007), and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### B.     Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff has provided objective medical evidence of underlying impairments which might reasonably produce some of the symptoms alleged. (*See* Tr. 24-25, reflecting that the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully supported prior to June 23, 2015"). The ALJ was therefore required to provide clear and convincing reasons for discrediting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ did not meet that standard here.

#### 1.     Lack of Treatment Compliance

First, the ALJ discounted Plaintiff's testimony relating to his impairments as of December 31, 2014, Plaintiff's date last insured, on the ground that Plaintiff was not consistently taking his medications. (Tr. 25.) Specifically, the ALJ noted that Plaintiff was restarted on HIV medications in November 2012 and December 2014 after reporting that he had been off his medications for several months. (Tr. 25, citing Tr. 579, 584.)

The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012) (quoting *Tommasetti*, 533 F.3d at 1039). Here, however, Plaintiff explained his lack of compliance with his HIV treatment, noting that it was difficult for him to remember to take his medication, that the medication side effects made him sick with dizziness, nausea, and diarrhea, and that he was suffering from depression. (Tr. 54, 314.) Medical records from both prior to, and after, Plaintiff's date last insured, support Plaintiff's testimony. (*See* Tr. 429-31, a February 27, 2013 treatment note stating that Plaintiff stopped taking his HIV medication due to increased depression and anxiety and noting that Plaintiff may experience potential nausea related to HIV medications; Tr. 426, a April 14, 2013 treatment note stating that Plaintiff missed a few doses of medication and continues to struggle with depression and anxiety; Tr. 414, a February 9, 2015 treatment note stating that Plaintiff has "difficulty with side effects" related to his medication, which includes "mostly headaches and nausea" which Dr. Schultz noted were "[d]ifficult to know if this is related to medication or underlying disease process").

This Court has previously recognized that claimants should not be penalized for treatment gaps that are attributable to a claimant's impairments. *See Rachel H. v. Saul*, No. 3:18-cv-02020-SB, 2020 WL 954969, at *4-5 (D. Or. Feb. 27, 2020) (holding that it was not a clear and convincing reason to discredit claimant's treatment gaps when those treatment gaps were attributable to claimant's alleged impairment). Plaintiff's failure to remain on his HIV medication was directly attributable to the side effects he experienced from HIV and his medication, and therefore this Court finds that substantial evidence does not support the ALJ's finding that Plaintiff had an unexplained or inadequately explained failure to follow a prescribed

course of treatment. Accordingly, Plaintiff's failure to take his medication consistently is not a clear and convincing reason to discredit his subjective symptom testimony.

### 2. Effective Treatment

The ALJ also discounted Plaintiff's testimony on the ground that a December 2014 treatment note showed that Plaintiff was "doing better with emotional and physical stability, felt like he could take his medications without missed doses, and seemed to be coping better with his elbow pain." (Tr. 25, citing Tr. 594.) An ALJ may discount a claimant's testimony based on effective treatment. *See Bettis v. Colvin*, 649 F. App'x 390, 391 (9th Cir. 2016) (holding that the ALJ met the clear and convincing reasons standard, and stating that the ALJ appropriately discounted the claimant's testimony on the ground that his "condition improved with treatment," because "'[i]mpairments that can be controlled effectively with [treatment] are not disabling'" (citation omitted)). Here, however, substantial evidence does not support the ALJ's finding.

Although the ALJ correctly notes improvement with Plaintiff's emotional stability, physical stability, and elbow pain in December 2014, a review of the entire record demonstrates that Plaintiff's depression, anxiety, arm pain, and neuropathy were never effectively treated, as treatment records show that these impairments continued to be a problem prior to Plaintiff's date last insured of December 31, 2014, and continuing beyond his disability date of June 23, 2015. (*Compare* Tr. 418, 594, the December 7, 2014 treatment note stating that Plaintiff "seems to be coping better with his elbow pain," *with* Tr. 433, 431, 429, 426, 418, 414, 410, 406, 402, 377, treatment notes from Dr. George Schultz from November 7, 2012, February 27, 2013, April 14, 2013, December 7, 2014, February 9, 2015, March 23, 2015, April 22, 2015, July 1, 2015, and October 11, 2015 respectively, consistently noting Plaintiff's depression, anxiety, peripheral neuropathy, and epicondylitis as "Active Problems"; Tr. 431, a February 27, 2013 treatment note stating that Plaintiff "[c]ontinues to struggle with arm pain," his epicondylitis is "[s]till

PAGE 9 – OPINION AND ORDER

problematic no new suggestions," and Plaintiff's anxiety disorder is noted to be "still problematic"; Tr. 414, a February 9, 2015, treatment note stating that Plaintiff is "coping" with his depression although it remains a "major problem" and that he is "having increasing pain"). Based on these treatment records, substantial evidence does not support the ALJ's finding that Plaintiff's impairments were effectively controlled during the relevant time period.

### 3. Daily Activities

The ALJ also discounted Plaintiff's testimony on the ground that he was working as a caregiver for his father. (Tr. 25.) Plaintiff argues the ALJ's reason for discrediting Plaintiff on this ground "lacks the specificity required to reject symptom testimony as the ALJ must specifically state which symptom testimony is not credible and what facts in the record lend to that conclusion." (*Id.*, citing *Smolen*, 80 F.3d at 1284 and *Holohan*, 246 F.3d at 1209 (internal citations omitted)). This Court agrees.

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1165. However, here Plaintiff did not claim that he was able to provide caregiving for his father on his own, but rather that he required assistance from his sister to care for their father. (*See* Tr. 61, Plaintiff testified that his sister had to assist him in caring for their father several times a week due to Plaintiff's fatigue or illness.) The ALJ failed to explain why Plaintiff's limited caregiving activities contradict his subject symptom testimony regarding fatigue, medication side effects, and inability to hold objects. (*See* Tr. 52, 57-58, Plaintiff testified that the neuropathy and tendonitis in his hands caused him to drop things, Tr. 54-56, Plaintiff testified that his HIV medication caused dizziness, nausea, diarrhea, and headaches, and that he struggled with fatigue; Tr. 314, 320-21, Plaintiff's July 22, 2015 function report noted that his HIV medications cause nausea, dizziness, diarrhea, headaches, and trouble sleeping, that he suffers from lower back, muscle, and

PAGE 10 – OPINION AND ORDER

joint pain, and that his bilateral epicondylitis causes extreme pain and tingling in his arms.) Based on this evidence, the Court finds Plaintiff's limited caregiving activities are not a clear and convincing reason to discredit Plaintiff's subjective symptom testimony.

Plaintiff also argues that the ALJ erred by "failing to address Plaintiff's Activities of Daily Living," which were "limited" because of hand and arm issues which required him to take breaks, lie down between activities, and require "help with certain chores." (Pl.'s Opening Br. at 10.) As noted above, the ALJ reviewed Plaintiff's caregiving activities for his father, but improperly relied on Plaintiff's limited caregiving activities to discredit his subjective symptom testimony. The ALJ did not evaluate any of Plaintiff's other activities of daily living, which the Court agrees was error here. For these reasons, Plaintiff's activities of daily living were not a clear and convincing reason to discredit his subjective symptom testimony.[4]

### 4. Objective Medical Evidence

Finally, the ALJ discounted Plaintiff's testimony on the grounds that it was inconsistent with the objective medical evidence. (*See* Tr. 25; finding that Plaintiff's "treatment evidence prior to and as of December 31, 2014 does not appear to support significant functional limitations," summarizing the objective medical evidence, and concluding that Plaintiff "had the residual functional capacity for light work with postural, manipulative, and environmental limitations"; *see also* Def.'s Br. at 16, agreeing with the ALJ's determination and noting that "the overwhelmingly unremarkable exam findings would undermine any complaints here").

As discussed above, the ALJ erred in discounting Plaintiff's testimony based on his lack of compliance with medical treatment, effective treatment of symptoms, and his activities. Thus,

---

[4] In light of the Court's finding, it does not address the parties' dispute about whether "[c]aregiving for an adult" is "fundamentally different" than providing "childcare." (Def.'s Br. at 16; *see also* Pl.'s Opening Br. at 12 (citing *Trevizo*, 871 F.3d 664)).

PAGE 11 – OPINION AND ORDER

even if the objective medical evidence does not support Plaintiff's testimony, the ALJ may not rely on that as the sole reason to discredit Plaintiff's testimony. See Taylor v. Berryhill, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony about debilitating mental and physical impairments) (citation omitted). Accordingly, the Court concludes that the ALJ erred in discounting Plaintiff's testimony. See Heltzel v. Comm'r of Soc. Sec. Admin., No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) ("Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony.").

## II.     MEDICAL OPINION EVIDENCE

### A.     Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" Id. (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" Ghanim, 763 F.3d at 1161 (citation omitted).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Garrison, 759 F.3d at 1012 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more

PAGE 12 – OPINION AND ORDER

than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

### B.  Analysis

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of his treating doctor, Dr. Schultz. (Pl.'s Opening Br. at 6-9.) The Court agrees.

Dr. Schultz had served as Plaintiff's treating physician since 2011, and saw Plaintiff every three to six months. (Tr. 547.) On June 1, 2017, Dr. Schultz completed a medical evaluation. (Tr. 551-53.) In his medical evaluation, Dr. Schultz reported that Plaintiff had been diagnosed with neuropathy of his hands and forearms, HIV/AIDS, tonsillar cancer, anxiety, depression, and Post-Traumatic Stress Disorder. (Tr. 551.) He noted that Plaintiff would need to lie down two times a day for an hour, and that Plaintiff's diagnosed impairments caused "weakness, [decreased] mental attention, fatigue, insomnia, and nausea." (Tr. 552-53.) Dr. Schultz concluded that Plaintiff would be unable to maintain a regular work schedule consisting of an eight-hour day, five days a week with normal breaks. (Tr. 553.)

On February 2, 2018, in a subsequent treating source statement, Dr. Schultz noted that Plaintiff's medical conditions led to poor use of his upper extremities, poor cognitive functioning, and poor dexterity. (Tr. 547-48.) He believed Plaintiff could sit for one hour without a break, stand for one hour without a break, and would need a job that would allow him to shift positions between sitting, standing, and walking during the day. (Tr. 548-49.) Dr. Schultz noted that Plaintiff would need to take frequent 15- to 20-minute unscheduled work breaks throughout

PAGE 13 – OPINION AND ORDER

the day and would have limitations in doing repetitive reaching, handling, or fingering. (Tr. 549.) Dr. Schultz reported that Plaintiff could occasionally lift and carry less than 10 pounds, could occasionally lift and carry 10 pounds, and could never lift and carry 20 or 50 pounds. (*Id.*) He also reported that Plaintiff's hand and arm use have been his most disabling problem. (Tr. 550.) Overall, Dr. Schultz found that Plaintiff's medical problems would prevent him from maintaining a regular work schedule more than four days a month. (Tr. 553.) On April 9, 2018, Dr. Schultz submitted a form clarifying his June 1, 2017 and February 2, 2018 statements, and noted that the limitations he described in June 2017 and February 2018 regarding Plaintiff's hand and arm pain, weakness, and numbness had "been present since 2011." (Tr. 1122.)

Dr. Schultz's medical opinion conflicts with the opinions of the reviewing doctors, Dr. Neal Berner and Dr. Thomas Davenport, who found Plaintiff could occasionally lift twenty pounds, could stand for six hours in an eight-hour workday, and could sit for six hours in an eight-hour workday. (*See* Tr. 110, 112, 143.) Therefore, the ALJ was required to provide specific and legitimate reasons for discrediting his medical opinion. *See Valentine*, 574 F.3d at 692.

Here, the ALJ gave "little weight" to Dr. Schultz's treating source statements from June 1, 2017 and February 2, 2018 "to the extent that it applies to the period through December 31, 2014, the date last insured under the Title II application." (Tr. 26.) The ALJ found that "[a]s indicated previously, a treatment record prepared by Dr. Schultz in early December 2014 found no significant abnormalities on objective examination and specifically indicated that [Plaintiff] seemed to be doing better with emotional and physical stability." (Tr. 26, citing Tr. 594, 596.) Inconsistency between a physician's opinion and the underlying medical records is a specific and legitimate reason to discount the opinion. *See Tommasetti*, 533 F.3d at 1041.

///

PAGE 14 – OPINION AND ORDER

Plaintiff argues that the ALJ's reason for discrediting Dr. Schultz's medical opinion are not legally sufficient, specifically noting that the ALJ failed to explain why Dr. Schultz's December 2014 treatment note conflicted with his opinions from 2017 and 2018. (Pl.'s Opening Br. at 6-9.) The Court agrees. As noted above, although Dr. Schultz's December 2014 treatment note shows some improvement with Plaintiff's arm pain, a comprehensive review of Dr. Schultz's treatment notes demonstrates that Plaintiff continued to suffer from depression, anxiety, peripheral neuropathy, and epicondylitis prior to his date last insured of December 31, 2014 and continuing thereafter. (*See* Section I.B.2. above.) The ALJ erred by citing to only one treatment note and failing to evaluate the entire medical record, and the ALJ therefore failed to provide legally sufficient reasons to discredit Dr. Schultz's opinion. *See Holohan*, 246 F.3d at 1207 (holding that the ALJ erred when he "selectively relied on some of [clamaint]'s records . . . and ignored the many others that indicated continued, severe impairment."); *see also Lester*, 81 F.3d at 830 (holding that "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant").

### III. REMEDY

#### A. Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1021 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2)

PAGE 15 – OPINION AND ORDER

the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

      **B.**    **Analysis**

The Court finds that Plaintiff satisfies the credit-as-true standard here and that remand for an award of benefits is warranted.

First, the Court finds that the record has been fully developed. It includes years of medical treatment notes and testimony from Plaintiff and his treating physician, Dr. Schultz, about Plaintiff's symptoms, limitations, and functional capacity. The ALJ and Plaintiff's counsel asked the VE hypothetical questions that addressed whether a worker with Plaintiff's limitations could sustain gainful employment, and the VE testified that Plaintiff's limitations would preclude work. (*See* Tr. 76-77, the VE testified that a worker could not sustain competitive employment if he was "to miss two or three days of work per month on a continuing basis"; *see also* Tr. 553, Dr. Schultz reported that Plaintiff's medical problems would prevent him from maintaining a regular work schedule of an eight-hour day, five days a week with normal breaks of 10-15 minutes in the morning and afternoon, more than four days per month.)

The Commissioner argues that further proceedings are warranted because "if the ALJ failed to develop the record as [Plaintiff] claims, then there are outstanding issues." (Def.'s Br. at 18.) However, Plaintiff requested remand for further development of the record only in the alternative (Pl.'s Opening Br. at 13), and the Court adopted Plaintiff's primary arguments that

PAGE 16 – OPINION AND ORDER

the ALJ erred in evaluating his symptom testimony and Dr. Schultz's opinion. The Court finds that the record is sufficiently developed to allow for a proper evaluation of the evidence. *Cf. Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 1999) (noting that an ALJ is required to develop the record further where there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence).

The Commissioner also argues that the record "contains conflicting evidence, including conflicting opinions not substantively challenged by [Plaintiff]." (Def.'s Br. at 18.) However, the Commissioner does not identify the conflicting evidence. Furthermore, Ninth Circuit precedent and the objectives of the credit-as-true standard foreclose any argument that a remand for the purpose of allowing the ALJ to have a "mulligan" qualifies as a remand for a "useful purpose":

> Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis.

*Garrison*, 759 F.3d at 1021; *see also Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility."). Accordingly, the Court finds that Plaintiff meets the first part of the credit-as-true analysis.

Second, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony and Dr. Schultz's medical opinion. Accordingly, the Court finds that Plaintiff satisfies the second part of the credit-as-true analysis.

Third, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled because his impairments would cause him to exceed the customary tolerance for absences. Specifically, if the improperly discredited evidence were credited as true, the record demonstrates that prior to Plaintiff's date last insured of December 31, 2014, Plaintiff would be absent from work four days a month, and thus would miss more work than employers will tolerate. (*Cf.* Tr. 76-77, the VE testified that if a claimant missed "two or three days of work per month," claimant "would not be able to maintain competitive work"; Tr. 553, Dr. Schultz concluded that Plaintiff's medical problems would prevent him from maintaining a regular work schedule of an eight-hour day, five days a week with normal breaks of 10-15 minutes in the morning and afternoon, more than four days per month; and Tr. 1122, Dr. Schultz clarified that the limitations regarding Plaintiff's hand and arm pain, weakness, and numbness had been present since 2011.)

For these reasons, and because the Court does not have serious doubt about whether Plaintiff was disabled prior to December 31, 2014, Plaintiff's date last insured, the Court exercises its discretion to remand this case for an award of benefits. *See Varela v. Saul*, --- F. App'x ---, 2020 WL 5757587, at *1 (9th Cir. Sept. 28, 2020) (reversing district court opinion remanding for further proceedings and instead remanding with instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as true, there is no doubt that [the claimant] was disabled"); *Weirick v. Saul*, --- F. App'x ---, 2020 WL 5362091, at *2 (9th Cir. Sept. 8, 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "the vocational expert's testimony establishes that if the improperly discredited opinions of the treating physicians were credited as

true, there would be no jobs in the national economy that she could perform and 'the ALJ would be required to find the claimant disabled on remand'" (citing *Garrison*, 759 F.3d at 1020)); *Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "[t]he vocational expert concluded that an individual with [the claimant's] limitations, as described in the improperly discredited testimony of [the treating psychologist], the lay witnesses, and [the claimant], would be unable to perform competitive employment").

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for an award of benefits.

**IT IS SO ORDERED.**

DATED this 21st day of October, 2020.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge